# SUPREME COURT OF TEXAS.

## GALVESTON TERM, 1864.

---

NAPOLEON B. FERGUSON AND OTHERS v. ROBERT A. FERGUSON.

The law does not require that a will shall assume any particular form, or be couched in language technically appropriate to its testamentary character. However irregular it may be in form or inartificial in expression, it is sufficient, if it discloses the intention of the maker respecting the disposition of his property, and that it is intended to take effect after his death, and is in its nature ambulatory and revocable during his life.

When this is the character of its contents, any contrary title or designation which the maker may give to the instrument will be disregarded.

There is always a presumption against an imperfect testamentary paper, and when it is doubtful in which way such a paper should operate, it is for the jury to decide on the facts of execution and delivery and to draw the just inferences from the declarations of the maker.

See this case for an instrument of writing which on its face was held to leave it as a matter of doubt whether it was intended to operate as a deed or a will.

In a suit involving the legal effect of such an instrument, the fact of its delivery, and the intention and purpose of its execution should be submitted as a question of fact to the jury, to be guided, however, in their determination by the construction given to the terms of the instrument by the court, together with such extrinsic testimony as may be furnished by the parties to aid in their elucidation.

Authorities in reference to the form and manner of making wills cited and discussed.

APPEAL from Washington. Tried below before the Hon. R. E. B. Baylor.

This suit was brought by Napoleon B. Ferguson, William Murray and his wife Elizabeth A. V. Murray, against Robert A. Ferguson for the recovery of certain slaves. The petition alleged that the defendant on the 27th day of October, 1845, in the county of Fayette, made, executed and delivered to said Napoleon and Elizabeth, his children, his certain deed of gift, among other things, for certain negro slaves therein named, (a copy of which, properly certified, was attached to and made a part of the petition;) that said deed was acknowledged by defendant and duly recorded; that the defendant had a part of the slaves mentioned in the deed of gift and their increase in his possession; and set forth and described them. It further alleged that defendant was offering to sell the slaves as his own property, and threatened to remove them out of the limits of the State for said purpose, and plaintiffs greatly feared that he would remove them out of the limits of this State during the pendency of this suit, and prayed for a writ of sequestration.

The instrument referred to in the petition of plaintiffs and made a part thereof, was as follows:

" *To all whom it may concern :*

"Know ye, that I, Robert A. Ferguson, of the county of Fayette, Republic of Texas, do, this the twenty-seventh day of October, A. D. eighteen hundred and forty-five, freely and equally give unto my son and daughter, Napoleon B. Ferguson and Elizabeth Ann Virginia Ferguson, all the following named property, to wit:

"All the tract or parcel of land whereon I now live, known as a part of Brown's league, and formerly owned by Gideon B. Lockridge, together with all the appurtenances thereunto. Said land situated on Clear creek, in the county above mentioned. Also, all claims or lands, either by headright or otherwise, that may be in my possession at my death.

"Also the following named negroes: Mary and her two children, Sarah and Spencer, Rachel, America, Sophia and Elizabeth, with

all their increase, to have and to hold the same forever, as their own right and property after my death.

" Also my stock of horses, cattle and hogs that now are or may be in my possession, brand, or belonging to me at my death.

" Also all my household and kitchen furniture and plantation or farming utensils that now are or may hereafter be in my possession at my death.

" Also all money or debts, &c., that may be owing to me at my death. To have and to hold all of which property, them and their heirs, from and forever after my death.

"This deed, however, is not to deprive myself of the use of any or all of said property so long as I live, and after my death, they will take full possession of the whole, and it is my wish that they equally divide said property themselves, but should they disagree, that each of them choose disinterested persons to make the division between them according to this deed, so that no part of said property may be exposed to public sale.

" In witness whereof I have hereunto set my hand and affixed my seal this the day and date above written in presence of ——
                            " ROBERT A. FERGUSON.
"Attest:
    " William H. Murray,
    " Thomas Murray."

This instrument was acknowledged by Robert A. Ferguson and recorded in Fayette county.

The defendant excepted; his exception was sustained and the cause was dismissed; from which order of dismissal the defendants appealed, and assigned for error the rulings of the court in sustaining the exceptions to the petition of plaintiffs.

*W. G. Webb*, for the appellants, cited 2 Nott & McC. R., 531; 2 Vesey R., 226, 441; 23 Wend. R., 45; 2 Wend. R., 308; 1 Pax R., 32; Littell's Sel. Ca., 462; 3 My. & R., 32; 12 ? R, 371; 24 Ala. R., 12?; 13 Ala. R, 721; 6 Ga., 515 2 Murph. R., 188, 6 Watt R, 522; 3 Leigh R, 147.

---

Ferguson v. Ferguson.

---

*J. D. & D. C. Giddings*, for the appellee, cited 10 Mass. R., 456; 12 Mass. R., 456; 7 John., 26; 21 John. R., 52; 2 Kent Com., 438; 1 Tex. R., 161; 1 Jarm. on Wills, 14, 19, 20; 7 Metcalf R., 188.

MOORE, J.—The only question in this case depends upon the construction that should be given to the instrument of writing executed by Robert A. Ferguson, the appellee, on the 7th of October, 1845, in favor of the appellants, Napoleon B. Ferguson and Elizabeth A. V. Murray. Shall this instrument be held to be a deed or a will? The appellants, who were plaintiffs in the court below, allege in their petition that it was executed and delivered as a deed of gift, and with the intent and purpose of vesting in the donees an immediate and indefeasible title to the property embraced in it, to take effect in possession after the termination of the life estate reserved to the donor. The court below from its action upon the demurrer evidently regarded the paper as of altogether a testamentary character. And if this is the clear and unequivocal legal import of the instrument, its legal effect could not, of course, be contradicted or varied by proof, that it was executed and delivered with the belief and intention on the part of the maker that it would operate as a deed of gift. If on the other hand it was intended to operate as a deed, and it is fairly and legally susceptible of such a construction, effect should be given to it as such.

The law does not require that a will shall assume any particular form, or be couched in language technically appropriate to its testamentary character. However irregular it may be in form, or inartificial in expression, it is sufficient if it discloses the intention of the maker respecting the disposition of his property and that it is intended to take effect after his death, and is in its nature ambulatory and revocable during his life. When this is the character of its contents, any contrary title or designation which the maker may have given to the instrument, will be disregarded. Thus, a deed-poll, and even an agreement or other instrument between parties, has been held to have a testamentary operation. (Gage

Ferguson v. Ferguson.

v. Gage, 12 New Hamp., 371; Sheppard v. Nabers, 6 Ala., 632; Dunn and wife v. Bank of Mobile, 2 Id., 153; Ingram v. Potter, 4 McCord, 198; Therold v. Therold, 1 Phill.; Hinon v. Hinon, Finch, 195; Attorney-General v. Jones, 3 Price, 469.)

But this has been generally, if not invariably done, when by reason of some defect the instrument could not be sustained as a deed, or had not, in fact, been intended to operate as such. In the case of Golding v. Golding, 24 Ala., 122, Ligon, J., says, "Upon a review of all the cases our conclusion is, that when an instrument is rendered equivocal in its character by being inartificially drawn and its execution is perfected by delivery, the courts, to prevent the intention of the maker from being defeated, and to give it effect, will hold the instrument to be a deed. But we have been unable to find any case, in which the inartificial arrangement of the words of the instrument has been relied upon or permitted to defeat that intention, and render the instrument inoperative and nugatory."

(See, also, Horn's ex'rs v. Gratman, 1 Florida, 63; Carnes and wife v. Marley, 2 Yerg., 584; Carnes and wife v. Jones, 5 Id., 254; Williams v. Ward, 1 Sneed; Dawson v. Dawson, Rice's Eq. R., 260; Thompson v. Browne, 3 My. & K., 32; Griffin v. Ferard, 1 Curt., 97.)

In discussing the form and manner of making a will, the correct doctrine by which the courts are governed in passing upon instruments of a doubtful or uncertain character, is thus aptly and forcibly expressed in Williams on Executors: "The true principle to be deduced from the authorities appears to be, that, if there is proof, either in the paper itself, or from clear evidence *dehors*, first, that it was the intention of the writer of the paper to convey the benefits by the instrument which would be conveyed by it if considered as a will; secondly, if death was the event that was to give effect to it; then, whatever may be its form, it may be admitted to probate as testamentary. And there seems to be this distinction in the consideration of papers which are in their terms dispositive, and those which are of an equivocal character, that the first will be entitled to probate, unless they are proved not to have been written *animo testandi;* whilst in the latter, the *ani-*

*mus* must be proved by the party claiming under them." (1 Williams on Ex'rs, 87.)

There is always a presumption, it is said, against an imperfect testamentary paper; and when it is doubtful in which way such paper should operate, it is for the jury to decide on the facts of execution and delivery, and to draw the just inferences from the declarations of the maker. (Herrington v. Bradford, Walker, 520; Robertson v . Dunn, 2 Munf., 133; Robison v. Kee, 4 Dev., 301; Lyles v. Lyles, 2 Nott & McC., 531; Wigle v. Wigle, 6 Watts, 522; Wanham v. Sellers, 9 Gill & John., 98; Witherspoon v. Witherspoon, 2 McC., 520; King's Proctor v. Daims, 3 Hagg., 218.)

It can not be insisted for a moment that the paper under discussion in this case is a perfect testamentary instrument. It is evidently very inartificially drawn whether intended as a deed or a will. But the maker himself calls it a deed, and its phraseology and manner of execution is much more analogous to instruments of that character than to wills. It is executed under seal which is unnecessary in a will. Subsequent to its execution it was duly acknowledged by the maker as his deed, before the clerk of the County Court, and placed upon record as such, which was unnecessary and very unusual with wills, but appropriate, if not essential, if it was intended as a deed. The operative word "give," which is the only one used in the instrument is appropriate to either a deed or will, but standing alone it would seem to indicate a direct and immediate gift, rather than a testamentary bequest. The habendum clause, which is twice used, would be altogether out of place in a will, and the reservation of a life estate to the maker is wholly inconsistent with the idea that the instrument was intended as a will. That the beneficiaries should not take, or hold possession of the property until after the death of the maker, is as consistent with the supposition that he intended to make a deed of gift in fee after the termination of a life estate reserved to himself, as that the instrument was intended to be of a testamentary character. On the other hand, those clauses of the instrument embracing property to be subsequently acquired by the maker, while they might be properly embraced in a will,

are inoperative and void in a deed, and may be fairly referred to as tending in some degree to repel the conclusion to be drawn from other parts of it, that it was not executed or intended to operate as a testamentary intrument. The legitimate conclusion, therefore, to be deduced from the face of the paper, leaves it a matter of doubt whether it was intended to operate as a deed or will. And in such cases, the fact of its delivery, and the intention and purpose of its execution should be submitted as questions of fact to the jury, to be guided in their determination of them, however, by the construction given to the terms of the instrument by the court, together with such extrinsic testimony as may be furnished by the parties to aid in their elucidation.

The judgment is reversed and the cause remanded.

Reversed and remanded.